No. 14200

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JACK G. STANDLEY,

Defendant and Appellant.

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Joel Roth, Judge presiding.

Counsel of Record:

For Appellant:

Gary Wilcox argued, Billings, Montana
Russell Shultz argued, Witchita, Kansas

For Respondent:

Harold Hanser, County Attorney, Billings, Montana
Charles Bradley argued, Deputy County Attorney, Billings, Montana
Mike Greely, Attorney General, Helena, Montana

Submitted: October 23, 1978

Decided: NOV    1978

Filed:        1978

_Thomas J. Kearney_
                        Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction of the theft following a jury trial in the Yellowstone County District Court.

In the early morning hours of March 22, 1977, 106 new R.C.A. color television sets were stolen from the Ramada Inn warehouse in Billings, Montana. This warehouse is located directly behind the motel.

The theft was discovered by the Ramada's maintenance foreman when he unlocked the warehouse in the morning. He found a place in back of the building where the sheet metal was torn. He also noticed some tire tracks in the soft dirt behind the building.

The Billings police during their investigation determined that the vehicle which made the tire tracks had dual wheels in back and a single axle in front. The police photographed the tracks and made plaster casts of them.

On or about March 25, 1977, Stephen Haborstak, who operated the T & J Electronics Company, received a phone call from Orie Dosdall, a farmer near Pryor, Montana. Dodsdall wanted Haborstak to come out to his home and fix his television set. It was Haborstak who had been employed by the Ramada to install the television sets in the motel rooms. After Dosdall described the television set and the difficulty he was having with it, Haborstak became suspicious that this was one of the sets taken from the Ramada Inn. He called the police and informed them of Dosdall's call and then went out to Dosdall's farm to repair the television. In repairing the set, he noticed that the serial njmber had been removed from the outside of the set but found the serial number on the inside of the set. This identified it as one of the stolen television sets.

Because of the information Haborstak gave the police, they

obtained a search warrant for the Dosdall property. The police searched the property on March 30, 1977. They found eight of the R.C.A. television sets stolen from the Ramada, along with some other stolen property.

The State filed an Information against defendant charging him with felony theft in violation of section 94-6-302(1), R.C.M. 1947. Defendant pled not guilty to the charge. The case came on for trial on October 25, 1977.

Dosdall was a witness for the State at defendant's trial. Dosdall testified that defendant, whom he had known for 10 to 15 years, came to his farmhouse around 5:00 a.m. on March 22. He testified that defendant wanted a logging chain to pull a truck. A half hour after getting the logging chain, defendant returned seeking Dosdall's help in pulling the truck. Dosdall helped defendant and another man by pulling the van truck onto his property with his tractor. Defendant and the other man then left in defendant's car.

Dosdall further testified that later in the day he got the van started after putting some gas in it. When he got the engine going, Dosdall said he was then able to operate the hydraulic lift on the van and look inside. He testified that the van was full of uncrated television sets. Dosdall testified that, with the help of his hired hand, Phillip Dolichek, he removed eight television sets from the van.

According to Dosdall, defendant and the other man returned the next day or the day after and removed four tires from the van. Dosdall said that the van had rear duals and two of them were removed. He said that when they removed the tires defendant was driving his Toyota pickup. At that time, Dosdall talked with defendant and asked what was in the van. Defendant only smiled. Dosdall testified that they returned the next night and put the

tires back on.  Dosdall was not certain whether the van left the night the tires were put back on or the next night.

Dosdall went on to testify that the day after the van left, the driver of the van came to Dosdall's for help in pulling the van out of a ditch.  After Dosdall got dressed and came outside, the van driver pulled a gun out and placed it next to Dosdall's ear.  Dosdall testified that defendant was in his pickup in the yard.  The van driver told Dosdall to keep quiet about the television sets or they would kill him and his family.  At that point, defendant told the other man to cut it out.  The van driver then put his gun away.  Dosdall then testified that defendant and this other man followed him back to his house and eventually left.

Dolichek testified that the van arrived in the early morning hours around March 21.  He testified that he never saw the men who were driving it.  He said that it was full of television sets and he helped defendant remove several of them.  He said that the van was on the property for about three days.

Ralph Havin, the manager of Gus and Jack's Tire Shop in Billings, testified that defendant came to his shop on March 25 to have some tires fixed.  He said that three of the tires were good and one was flat.  He said that two of the tires were on Chevrolet wheels and two were on Ford or Dodge wheels.  The van, according to Dosdall, was a Dodge.  Dosdall, however, testified that none of the tires were flat.

Havin testified that when defendant came back he gave him two tires on wheels, two empty wheels, and one loose tire. He said he could not remember which of the wheels had the tires on them.  Havin was shown the pictures of the tire tracks from behind the Ramada warehouse.  He said the tires that made those tracks were 8.25-20 or 9.00-20, which could have been the same

- 4 -

size that defendant had brought in to him. Havin also testified that when defendant came to his shop he was driving his Toyota pickup.

At the close of the State's case, defendant moved for a judgment of acquittal, which the District Court denied. Defendant then rested his case without presenting any evidence. The jury returned a verdict of guilty. Following the denial of his motion for new trial, the court sentenced defendant to ten years in the State Prison. Defendant is now free on bail pending this appeal.

Defendant raises three issues in his appeal:

(1) Was the testimony of Dosdall sufficiently corroborated?

(2) Did the District Court err in denying his motion for acquittal?

(3) Was the prosecution's closing argument prejudicial?

The court instructed the jury that Orie Dosdall was an accomplice of defendant and that his testimony had to be corroborated as required by section 95-3012, R.C.M. 1947. Defendant did not object to these instructions and does not do so now. Defendant's position is that Dosdall's testimony was not sufficiently corroborated. We disagree.

Defendant was charged with violating section 94-6-302(1). This theft statute encompasses possession of stolen property. Although the state did not prove that defendant took the television sets from the Ramada warehouse, it proved that defendant was purposely  and knowingly in possession of the stolen television sets thereafter. With that in mind, we hold that Dosdall's testimony about defendant's possession of the stolen television sets was sufficiently corroborated.

This Court recently discussed the rules on corroboration, saying:

- 5 -

> "The rule on corroboration is stated in State
> v. Cobb, (1926), 76 Mont. 89, 245 P. 265.  In
> that case, we held that the corroborating evidence
> may be supplied by the defendant or his witnesses;
> it may be circumstantial evidence; it need not be
> sufficient to sustain a conviction or establish a
> prima facie case of guilt; and it need not be
> sufficient to connect the defendant with the crime
> but must tend to connect him with the crime.  In
> State v. Keckonen, (1938), 107 Mont. 253, 84 P.2d
> 341, we held that where the alleged corrobative
> evidence is equally consonant with a reasonable
> explanation pointing toward innocent conduct on the
> part of defendant, then such evidence does not tend
> to connect him with the commission of the offense
> and is in the realm of speculation, not corrobo-
> ration.  Where the claimed corroboration shows no
> more than an opportunity to commit a crime and
> simply proves suspicion, it is not sufficient
> corroboration to justify a conviction upon the
> testimony of an accomplice.  State v. Jones, (1933),
> 95 Mont. 317, 26 P.2d 341."  State v. Coleman (1978),
> ____Mont.____, 579 P.2d 732, 748, 35 St.Rep. 560.

The corroborating evidence here is sufficient to sustain

defendant's conviction:  Dolichek's testimony that the van was

on the Dosdall property; his testimony that it was full of tele-

vision sets and it was from the van that Dosdall and he took

eight of the sets; Havin's testimony that defendant brought four

tires to him which were about the same size as the tracks photo-

graphed behind the warehouse; Havin's testimony that the defen-

dant came to his shop on March 25, which would be the day after

Dosdall saw defendant removing the tires; Havin's testimony that

defendant was transporting the tires in his Toyota pickup which

is the same truck Dosdall saw him use; and the direct evidence

that the eight sets found on Dosdall's property were eight of

the 106 television sets stolen from the Ramada.

This evidence tends to connect defendant with possession

of the stolen television sets.  The evidence shows more than

suspicion.  The defendant's culpability may be deduced from this

evidence.  State v. Jones (1933), 95 Mont. 317, 26 P.2d 341.  The

independent corroborative evidence does not establish any reason-

able explanation pointing toward innocent conduct.

Defendant next contends that the court erred in denying

- 6 -

his motion for acquittal. Defendant's arguments here again are that Dosdall's testimony was not sufficiently corroborated for the case to go to the jury.

We can find no error in the District Court's denial of defendant's motion. In denying the motion, the District Court determined that the corroboration of Dosdall's testimony was sufficient.

> "It is well established in Montana that the sufficiency of the corroboration necessary to sustain a conviction based on the testimony of an accomplice is a matter of law (Citations omitted.) When the trial judge is satisfied that the evidence is corroborative, he must submit the case to the jury to determine what effect the corroboration has and whether it is sufficient to warrant a conviction. The weight given an accomplice's testimony is for the jury to decide." State v. Perry (1973), 161 Mont. 155, 161, 505 P.2d 113.

The trial judge, having found that the evidence was corroborative of Dosdall's testimony, submitted the case to the jury. We find no error.

Defendant's final contention is that the prosecutor's closing argument was prejudicial.

We do not know exactly what was said by the prosecution in their closing argument as no transcript was ever made of it. Counsel for both sides, after the jury was deliberating, attempted to make a record of what was said and defendant's objections thereto. However, this record is not sufficient for purposes of appellate review. We cannot determine the effect, if any, of the closing argument on the substantial rights of defendant. State v. Black (1973), 163 Mont. 302, 516 P.2d 1163. Accordingly, this specification of error must fail.

We have examined all arguments and authorities advanced by defendant. None would change the result of this appeal. We find it unnecessary to comment on each in this decision.

Judgment affirmed.

_____
Chief Justice

- 7 -

We concur:

_____

John Conway Harrison

Daniel J. Shea

John C. Shelby

Justices